**STATE ex AURAND v STOCKLEIN et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1540. Decided April 22, 1939

E. L. Mikesell, Dayton, for Relator.

Herbert S. Beane, City Attorney, Dayton; M. J. Gilbert, Asst. City Attorney, Dayton, for Respondents.

### OPINION

By GEIGER, J.

This is an original action in this

court wherein the relator prays that a writ of mandamus issue commanding the repsondents to recognize relator as the lawful incumbent of her former position.

The allegations of the petition are briefly that the defendants are the acting directors of the department of public welfare and finance of the City of Dayton; that the charter adopted by the city established a civil service board to conduct examinations as to qualification of applicants and perform other services; that on the 8th day of July, 1937, relator passed the examination given by the board for the position of Recreation Instructor in the civil service of the city and was placed on the eligible list and on the 17th of July, 1937, one of the defendants did appoint her to and she entered the employment of the city as Recreation Instructor; that she was employed through the probationary period, during which an employee may be dismissed, and was continued as a permanent employee at a salary of $90.00 per month until the time of her dismissal.

Relator further states that there is no provision in the charter of the city of Dayton which delegates to the civil service board or commission the power to fix any grounds in lieu of §486-17 et seq. GC, for the dismissal of a civil service employee and urther that Section 100 of the charter of the city of Dayton provides that an employee shall not be discharged or reduced until he has been presented with reasons therefor and has been given an opportunity to be heard.

Relator further alleges that the defendent Stoecklein, the director of public welfare, at the instance of the chairman of the Civil Service Board on June 10, 1938, did wrongfully and without cause order the relator's dismissal, in that the relator was not presented with any reason stated in writing or given an opportunity to be heard; that the purported reasons served upon her, after her dismissal, constituted no valid ground being that she had not at the time she made application announced

her recent marriage and newly married name, it being asserted that whether a person is single, married or divorced is wholly immaterial under the rules of the board as applying to her position. Relator sets out Section 110 of the city charter providing, in substance, that any employee who is suspended by the director of that department or the city manager may appeal from the decision to the civil service board and that the judgment of such board is final. It is asserted that in conformity to the rule promulgated she appealed from the order of dismissal and that her appeal was heard sustaining the charges and that the relator has no adequate remedy at law. Relator prays for a writ of mandamus commanding the director of public welfare to recognize her as the lawful incumbent of the position of Recreation Instructor and to take all steps necessary to restore her to those things lost by reason of the illegal dismissal of June 10 and that the court order Earl Hagerman to reinstate her to her place on the payroll and to issue to her vouchers for all salary withheld by reason of the dismissal.

To the relator's petition the respondent, Hagerman, answers admitting his official capacity and for further answer states that pursuant to an order issued by Fred O. Eichelberger, City Manager, effective June 15, 1938, the plaintiff's name was stricken from the payroll and that by virtue of said order he is without authority to make payments sought by the relator.

The defendant, Stoecklein, Director of the Department of Public Welfare, answers to the effect that in the application for the position, relator misrepresented her marital status thus violating certain rules of the civil service board of Dayton, the pertinent one being, in substance, that the board may refuse to examine or to certify as eligible applicants who have intentionally made a false statement of any material fact or have practiced any deception or fraud in their application. The rule further states that such disqualification shall be good cause for

removal, if ascertained after appointment. It is further asserted that relator was given a hearing prior to her dismissal and received notice in writing of her dismissal in accordance with Section 100 of the charter and that in pursuance of Section 101 the relator appealed from the order of dismissal to the Civil Service Board which Board, after hearing, dismissed the appeal.

The respondent further states that by the provisions of Section 101 of the charter, the judgment of the Civil Service Board is final with certain exceptions. Respondent asks for dismissal of the relator's petition.

It is agreed that the answer of Stoecklein, above set out as director of public welfare, shall be the answer of Eichelberger as City Manager.

Certain interrogatories were submitted and answered by the respondents, Stoecklein and Eichelberger, which are too lengthy to detail.

Thereupon the relator filed a demurrer to the answers to the following effect; the relator demurs specifically to the new matter set out in the answer detailed as follows:

(1) The second paragraph of the first page,

(2) The first paragraph of the second page,

(3) The second paragraph of the second page,

and for grounds says the matters therein contained are insufficient to constitute a defense.

Relator and respondents filed briefs on the demurrer to the answers. These briefs present questions relating to the proper interpretation of certain statutes, ordinances and rules that are claimed to be pertinent to the issue.

Our sole question is to determine whether or not the answer of the defendant, on its face, presents matters that are a defense against the allegations of the petition. Some question has been raised as to whether or not this answer should have specifically plead certain ordinances rather than to have referred to them by number. If we find that the provisions of the ordinances have been disclosed to the court, either in the answer or in the answer to the interrogatories, we will give them full consideration as though they were properly and specifically plead.

Sec. 486-17a provides in substance that the tenure of any employee or subordinate, in the classified service of the cities, holding a position, under the provision of the act, shall be during good behavior and efficient service, but any such officer may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of the act or the rules of the commission or any other failure of good behavior or any other act of misfeasance, malfeasance or nonfeasance in office. Any such employee so removed may appeal from the decision to a municipal commission, in which event the commission shall appoint a trial board to hear the appeal and it may affirm, disaffirm or modify the judgment of the appointing authority and the Commission's decision shall be final.

Sec. 486-19 GC relates to Municipal Civil Service Commissions.

The respondent admits, in his answer, that the probationary period provided by the charter had expired and that relator's status had become that of an employee prior to her removal. It is then alleged that in the application for the position the relator misrepresented her marital status and violated Rule 5, Section 1, Paragraph 5 of the Rules of the Civil Service Board which provide, in substance, that the Board may refuse to examine or, after examination, to certify as eligible applicants who have intentionally made a false statement of any material fact or have practiced or attempted to practice any deception or fraud and that any such disqualifications may be good cause for removal if ascertained after appointment.

Other provisions of the Code are simply enumerated without otherwise bringing them into the answer.

It appears from the interrogatories and the answers thereto. which we will consider as if incorporated into the defendant's answer, that the charter provides for the appointment of a Civil Service Board under Section 96 and that that Board, subject to the approval of the Commission, shall adopt and enforce a code of rules providing for the appointment and employment, in all positions, in the classified service based on merit, efficiency, character and industry. It further appears that Section 99 of the charter provides that an appointment shall not be complete until the period of probation, not exceeding six months, has ·lapsed and that a probationer within such period may be discharged upon the recommendation of the head of the department.

Section 96 of the charter ·provides that the rules adopted by the board shall have the force and effect of law.

Several principles may be considered as having been established, among which are that where ▆▆▆ ▆ certain jurisdiction is duly granted to a Board, such Board can not confer upon itself further jurisdiction or add to its powers by the adoption of rules under authority granted to adopt rules of procedure. Davis v State ex rel, 127 Oh St ·261. Verberg·v Board of Education, 135 Oh St 246.

In the case of State ex rel v Edwards, 90 Oh St 305, wherein the home rule charter of the City of Dayton was under examination, is was held as long as the provisions made in the charter of any municipality with reference to ·its civil service comply with the re-·quirements of §10, Art. 15, and do not conflict with any other provisions of ·the Constitution, they are valid and discontinue the general law on the ·subject as to that municipality.

The case of Fitzgerald v Cleveland, 38 Oh St 338, holds that the provisions of the Constitution authorize any city to adopt or amend a charter for its government and it may prescribe the form of government and define the powers of the different departments provided they do not exceed the powers granted in §3, Art. 18. This is an interesting case with the opinion by Judge Johnson with two concurring opinions, one by Judge Wanamaker and the other by Judge Wilkins. The effect of the decision is that, under the Constitution, charter cities have the right, within certain· limitations, of providing for local self-government and that where the charter has provisions in conflict with the general law of the State, the charter provisions shall control.

· It is held in State ex Ryan, 42 Oh Ap 19, syllabus 5:

"5. Rule that, in case of conflict between General Code and municipal charter in matter relating to civil service, latter ,prevails, applies only to where' conflict arises by express terms of charter, not by inference."

State ex Botaw v Matia, 43 Oh Ap 279 holds that municipal charter provisions regarding civil service controls conflicting State laws.

We may safely deduce the following general principle; that the purpose of the civil service law is ▆▆▆ ▆ to continue in positions those who are efficient, faithful and trustworthy and that after such officials have been appointed they may not be removed. except under the provisions of either the general law or in case of charter cities, the provisions of the charter; that, where, in charter cities authority is given to the commission to establish certain rules that these rules can not extend the power of the commission beyond the general power granted by the charter itself.

We also may conclude that where an employee in the classified civil service has been wrongfully deprived of employment by a void ouster, he ·may be restored to· his position through the writ of mandamus. As to the latter point see City of Toledo v Osborne 23 Oh Ap 62 and numerous cases therein cited. This decision was by Williams, J., now on the Supreme Court.

Also see **State ex Despres v County Commissioners, 47 Oh Ap 1** and the numerous cases there cited.

We do not deem it of value to further discuss the fine distinctions that may be made between statutory enactments, charter provisions and rules that may be adopted by commission, as in the matters which we consider as controlling in this case. the principles to be applied are the same and are probably best stated, so far as relates to removals, in §486-17a with such additional matter as has been added by the Municipal Code of Dayton and the rules adopted by the commission.

· The tenure of every officer, under classified service, shall be during good behavior and efficient service, but they may pe removed 'for certain definite causes, none of which relates to the claimed disqualification of this relator, except the possible disqualification of "dishonesty" in her alleged failure to state her martial relations. The disqualification complained of may also fall under the provisions of the rule adopted by the Dayton Commission that the Board may refuse to certify as eligible those who have intentionally made a false statement of any material fact or have practiced or attempted to practice any deception or fraud in their application, which disqualification shall be good cause for removal if ascertained after appointment.

The bare question is presented to us as to whether the false statement as to marital relations made by the relator at the time of her application for examination, but thereafter corrected within the probationary period of her appointment, constitutes either dishonesty, a false statement of a material fact or a deception or fraud in the application.

. Inasmuch as the ground for dismissal was that the relator falsely answered as to her marital status and inasmuch as it has been asserted, on her behalf, that she made known her true position before the expiration of the probationary period, we will examine the pleadings as well as the answers to the interrogatories to determine just what information came to the officials which might have been used as a basis for dismissal during the probationary period when no reasons need be assigned.

It is true that the interrogatories are not part of the pleadings and strictly do not come under inspection upon the demurrer to the answer, but we will consider their content as if they had been incorporated into the pleadings. On this point the petition states, in substance, that on the 17th day of July, 1937, the respondent appointed her to and she entered the employment of the city; that she was employed through the probationary period, during which an employee may be dismissed, and was continued on as a permanent employee until the time of her dismissal; that the respondent did, on the 10th of June, 1938, illegally order the relator's dismissal, the purported reason being that she had not, at the time she made application to take the examination, announced her then recent marriage and newly married name. There seems to be no allegation that she made known her status before the expiration of the probationary period.

The answer of Stoecklein admits that the relator was appointed in the manner and at the time alleged in her petition; that her probationary period had expired and that her status had become that of an employee prior to her removal.

The fifth interrogatory is to the effect: Did the relator announce her marriage to Delmar Aurand and show her marriage certificate therefor in December of 1937, that is, before her probationary period had expired and was she thereafter continued in the service of the city of Dayton under her married name of Mrs. Dorothy Aurand until the date of her discharge? In response to this interrogatory the respondent answered, "Yes'.

The seventh interrogatory makes inquiry about a letter written by the respondent under date of June 10, 1938 in which the respondent stated that she was dismissed, effective June 11, 1938, for the reason that on the 29th

day of June, 1937, she signed the application as Dorothy G. Rotroff and further that the oath was administered by Delmar L. Aurand and that it now appears that she was at the time married to Aurand. It is further recited in the letter that in answer to a question "Are you or have you been married", you answered, "Yes, divorced". It is then stated that this constitutes a violation of the rule of the Commission to the effect "—or who have intentionally made a false statement of any material fact or have practiced or attempted to practice any deception or fraud in their application, in their examination or in securing their eligibility or appointment."

The eighth interrogatory is, Was the reason cited in the foregoing notice the sole reason for the relator's discharge? To this the answer was "Yes".

The tenth interrogatory was, in effect, Has it made any difference, that is, been material at any time from the date the relator made application for examination to the present, what the marital status of one in the service of the city as a Recreational Director is? This interrogatory was answered, "No, the marital status in and of itself makes no difference but may, depending on the individual circumstances, make a great deal of difference. For example, the pregnacy of a married woman may render her incapable of performing the duties imposed upon her office."

The eleventh interrogatory is, Was the relator's answer that she was married at the time she made application to take the examination the truth? The answer to this interrogatory is that she did not state she was a married person but gave her name as Rotroff which was not that of her then husband and that she failed to give the name of her husband.

We have carefully examined the allegations of the pleadings and in connection therewith the interrogatories and the answers thereto. We find nothing that indicates that the plaintiff's marital position had anything to do with her discharge or in any way

brought her within the statute granting the board the right to discharge civil service employees.

We are especially confirmed in this view by interrogatory No 5 and its answer. The interrogatory made inquiry as to whether the relator had announced her marriage before her probationary period had expired and whether or not she was thereafter continued in the service of the city under her married name of Dorothy Aurand until her discharge. The answer to this is "yes".

During the probationary period it was the privilege of the board to discharge her without giving any reason. They knew of her marriage and they knew of the fact that she had not disclosed it at the time of her application for examination and yet, having learned it, they did not think it of sufficient consequence to call for her discharge during her probationary period. The neglect to take advantage of this information during the probationary period strongly indicates that, in the judgment of the Board, it was not a good ground for discharge.

Demurrer of relator to answer sustained. Respondent given ten days in which to file amended answer. Failing to do so within that time, writ will be allowed.

HORNBECK, PJ. & BARNES, J, concur.